# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOSE VASQUEZ,**<br>Plaintiff,<br>vs.<br>**DRAPER AND KRAMER MORTGAGE CORP.,**<br>Defendant. | CASE NO. 20-cv-06635-YGR<br><br>**ORDER GRANTING MOTION TO TRANSFER**<br>Re: Dkt. No. 20 |

Plaintiff Jose Vasquez brings this putative collective and class action against defendant Draper and Kramer Mortgage Corp. ("D&K") for (1) failure to pay straight, overtime, and minimum wages for all hours worked and to maintain records in violation of the Fair Labor Standards Act ("FLSA"); (2) failure to pay wages due upon termination in violation of the California Labor Code ("CLC"); (3) failure to pay all wages owed in violation of the CLC; (4) failure to provide rest periods in violation of the CLC; (5) failure to provide meal periods in violation of the CLC; (6) failure to reimburse business expenses in violation of the CLC; and (7) unfair business practices in violation of the California Unfair Competition Law.

Now before the Court is defendant's motion to transfer venue to the Central District of California pursuant to 28 U.S.C. section 1404(a).[1] (Dkt. No. 20.) Having carefully considered the pleadings and the paper submitted, and for the reasons set forth more fully below, the Court hereby **GRANTS** the motion to transfer venue.

---

[1] The Court has determined that the motion is appropriate for decision without oral argument, as permitted by Civil Local Rule 7-1(b) and Federal Rule of Civil Procedure 78. *See also Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp.*, 933 F.2d 724, 728–29 (9th Cir. 1991). Accordingly, the Court **VACATES** the hearing set for January 26, 2021.

## I. BACKGROUND

Defendant is the residential mortgage division of Draper and Kramer, a full-service real estate and financial firm incorporated in Delaware with principal executive offices in Illinois. (Complaint ("Compl."), Dkt. No. 1, ¶¶ 5, 31.) Vasquez alleges that defendant regularly conducts business in California, has nine offices in California, and employs loan officers in those California offices. (*Id.* ¶¶ 31–32.) Vasquez, currently residing in Santa Barbara, California, was employed by defendant as a loan officer from September 2018 to July 2020 and performed his work in Santa Barbara. (*Id.* ¶ 29; Civil Cover Sheet, Dkt. No. 2; Declaration of Karla Beinborn, D&K Payroll and Human Resources Manager, in Support of Motion ("Beinborn Decl."), Dkt. No. 20-2, ¶ 3; Declaration of Jose Vasquez in Opposition to Motion ("Vasquez Decl."), Dkt. No. 23-1, ¶ 12.)

"A [l]oan [o]fficer's job involves communicating with loan applicants and potential loan applicants via phone and email, communicating with underwriting and other staff (also usually via phone and email), performing online research and education, and meeting with clients at the employer's office or, sometimes, in the field." (Compl. ¶ 3; *see also id.* ¶ 34 ("[l]oan [o]fficers [are] tasked with self-sourcing, originat[ing,] and closing mortgage loans").) With respect to his first cause of action under the FLSA, Vasquez seeks to represent a nationwide class of current and former employees of defendant who worked as a loan officer or home mortgage consultant. (*Id.* ¶ 68.) With respect to the remaining six state law causes of action, he seeks to represent a California-wide class of same. (*Id.* ¶ 75.)

Vasquez alleges that loan officers perform their duties "either at their employer's office or in their own home offices. They spend a minimal amount of time outside these fixed sites in the field meeting with clients and such work is rare and sporadic, not customary, nor regular." (*Id.* ¶ 35.) He and other loan officers allegedly "did not receive any sort of compensation other than commissions promised in the [e]mployment [a]greement." (*Id.* ¶ 8.) While plaintiff alleges that "[n]o known exemption, under California law or the FLSA, applies to the work performed by [p]laintiff and the other [l]oan [o]fficers" (*Id.* ¶ 9), defendant asserts, among other affirmative defenses, an exemption for outside sales employees (Answer, Dkt. No. 13, Affirmative Defenses 13, 33).

According to Vasquez, venue is proper because he and other loan officers "did business and executed contracts with" defendant in this District, for which services defendant has "failed to pay wages due for said labor, and thus [this District is] where a substantial part of the events giving rise to the present claims under 28 U.S.C. § 1406(a) occurred." (Compl. ¶ 28.) In a footnote, he alleges that he had "sourced, originated, and 'cleared to close reviewed'" a home mortgage loan "in the amount of $510,000 on a homeowner's property in Kensington, California (within the jurisdiction of the Northern District of California), earning [p]laintiff wages due in the amount of $8,166.40 . . . ." (*Id.* ¶ 28 n.1.) Vasquez further alleges that as of the date of his separation from defendant, he is owed "the amount of $146,292.84 in commission wages payable to him upon funding." (*Id.* ¶ 56.)

**II. LEGAL FRAMEWORK**

Under 28 U.S.C. section 1404(a), a district court has discretion to transfer an action to another forum. That statute provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . .

Section 1404(a) "does not condition transfer on the initial forum's being 'wrong' . . . [a]nd it permits transfer to any district where venue is also proper . . . or to any other district to which the parties have agreed by contract or stipulation." *Atlantic Marine Const. Co., Inc. v. United States Dist. Court*, 571 U.S. 49, 59 (2013). The moving party carries the burden of showing that the transferee district is the more appropriate forum. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir. 2000). The purpose of a transfer under section 1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses[,] and the public against unnecessary inconvenience and expenses." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations and citation omitted).

Courts considering transfer must first determine whether the action could have been brought in the target district in the first instance. *See Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960). An action could have been brought in any court that has subject matter jurisdiction over

3

the claims and personal jurisdiction over the defendant, and where venue would have been proper. *See id.* Here, Vasquez argues that the proper venue is the Northern District of California under 28 U.S.C. section 1391 but does not dispute that the action could have been brought in the Central District of California.

"In the typical case . . . a district court considering a [section] 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations." *Atlantic Marine*, 571 U.S. at 62. If the action could have been brought in the target district, courts then undertake an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622). Relevant factors the Court may consider include: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum. *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009). Weighing of the factors is "best left to the discretion" of the Court. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

**III. ANALYSIS**

Here, defendant argues that transfer is appropriate because plaintiff's choice of forum should not control, and the 1404(a) factors weigh in favor of transfer to the Central District of California. The Court addresses the relevant factors below.

**A. PLAINTIFF'S CHOICE OF FORUM**

"Although great weight is generally accorded plaintiff's choice of forum, when an individual . . . represents a class, the named plaintiff's choice of forum is given less weight." *Hendricks v. StarKist*, No. 13-CV-729 (YGR), 2014 WL 1245880, at *2 (N.D. Cal. Mar. 25, 2014) (citing *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)). However, in class actions, courts have still given some deference to the named plaintiff's choice of forum where the plaintiff lived in the transferor district and the events at issue occurred in the transferor district. *Id.* at *2–3.

4

1  Here, Vasquez, the named plaintiff in this collective and class action, neither resided (or
2  currently resides) nor worked in the Northern District of California. Instead, he directs the Court's
3  attention to a single contact with the District, which he alleged as the basis for selecting this
4  venue. According to Vasquez, he "chose this forum for the reason that the incidents triggering
5  [his] claim occurred here in the Northern District of California – where the Kensington property
6  for which the mortgage loan he closed is located, where both non-party borrower-witnesses in that
7  transaction reside, on which [p]laintiff earned commission-wages which continue to be wrongfully
8  withheld, and where D&K maintains its Northern District of California office in Berkeley."
9  (Opposition at 3.) Other than identifying this one particular transaction, the record shows he
10 himself worked from defendant's Santa Barbara office in the Central District where he also lives.
11 Vasquez offers a declaration from Lyndon Chee, the non-party borrower in the Kensington
12 transaction, stating that "[a]t no point in this process did [he] ever meet Mr. Vasquez in person
13 outside his office, as any and all meetings [they] had related to this transaction were conducted
14 remotely." (Declaration of Lyndon Chee in Support of Opposition ("Chee Decl."), Dkt. No. 23-2,
15 ¶ 6.) Vasquez further offers his own declaration in which he states: "In most if not all weeks I did
16 not perform *any* outside activities – no outside sales activity or any other activity outside the D&K
17 office or my home office, but rather I and my fellow D&K loan officers performed all our job
18 duties using the phone, texts, emails and the internet." (Vasquez Decl., ¶ 12.) Putting aside the
19 relevance of these facts to defendant's affirmative defenses, these declarations undermine
20 Vasquez's choice of forum as no meetings apparently occurred at the location upon which
21 Vasquez heavily relies to justify venue in this District. Nor does Vasquez suggest that he
22 performed any of his duties in this District, that any of his supervisors were located in this District,
23 or that any of the relevant policies underlying the allegations were created in this District.
24 Accordingly, plaintiff's choice of forum is entitled little to no deference.
25 **B. CONVENIENCE OF THE PARTIES AND WITNESSES**
26 "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to
27 prove equally convenient or inconvenient." *Van Dusen*, 376 U.S. at 645–46. "Thus, transfer
28 should not be granted if the effect is simply to shift the inconvenience to the plaintiff." *Doe v.*

5

*Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1042 (N.D. Cal. 2020) (internal quotations and citations omitted). "[T]he convenience of the witnesses, particularly non-party witnesses, is often the most important factor." *Id.* (citing *Grossman v. Johnson & Johnson*, No. 14-CV-03557 (VC), 2015 WL 1743116, at *1 (N.D. Cal. Apr. 13, 2015) (citation omitted)). "To evaluate witness convenience, courts must consider not only the number of witnesses, but also the nature and quality of their testimony.'" *Id.* (internal quotations and citation omitted).

With respect to the parties, although defendant is a Delaware corporation headquartered in Illinois, it currently has nine offices in California, all but one of which is located in the Central District of California, including Vasquez's designated office in Santa Barbara. The one California office in the Northern District is located in Berkeley, "which is home to only [one] officer." (Beinborn Decl. ¶ 4.)[2]

As for plaintiff, in addition to working from defendant's Santa Barbara office, he also resided (during his employment) and currently resides in Santa Barbara. (*Id.* ¶ 6.) Indeed, "[a]ll but [four of the 84 California] loan officers [that have been employed by defendant] have been assigned to home offices in either Santa Barbara County, Ventura County[,] or Los Angeles County." (*Id.* ¶ 5.)[3] Vasquez appears to downplay his role in the action, arguing that "any

---

[2] Beinborn adds that in addition to the Berkeley office, defendant previously "maintained another office outside of the Southern California region in Folsom, California, which opened in 2018 and closed in 2019. The Folsom office was home to only [three] officers." (Beinborn Decl. ¶ 4.)

[3] Although 27 of the 58 loan officers are no longer currently employed, "[a]ll but four of these former loan officers have a last known address that is based in either Santa Barbara County, Orange County, Ventura County[,] or Los Angeles County." (Supplemental Declaration of Karla Beinborn in Further Support of Motion, ("Beinborn Suppl. Decl."), Dkt. No. 27-1, ¶ 3.) Beinborn does not state whether the four individuals in the total group and the subgroup are the same.

Curiously, Vasquez's counsel submits a declaration attaching "a spreadsheet identifying the nearly 250 licensed loan officers registered with the National Multiple Listing Services (NMLS) who, as of the filing of this action in September 2020, identify as currently employed by D&K at offices in their respective states across the country." (Declaration of Timothy Rumberger in Opposition to Motion ("Rumberger Decl."), Dkt. No. 23-3, ¶ 9, Exhibit 1.) The spreadsheet identifies 247 individuals, 34 of which list California addresses. Of these 34 potential California class members identified, only one is a resident of the Northern District of California.

individual loan officer[']s[ ] testimony is *de minimis* for venue purposes – whether from Berkeley, Santa Barbara[,] or any other D&K office location in the United States." (Opp. at 2 ("Any of D&K's currently employed loan officers located throughout the United States have similar competence to testify regarding D&K's nationwide payroll practices and commission wage policies and structure . . . ."; *see also id.* at 9 ("[T]he venue question presented here is not limited to the individual claims of this [p]laintiff but whether there would be significantly greater convenience for witnesses overall were this nationwide collective/class action to be litigated in one California district or another . . . .") However, Vasquez's unusual attempt to downplay the value of his own testimony (or that of any purported class member who may be called as a witness) does not erase the fact that he worked and resided and still resides in the Central District of California (as do/did nearly all potential California class members).

Regarding defendant's witnesses, "[m]ost of [D&K's] California senior management team work out of its Calabasas office. Any designated corporate witness as it relates to [ ] Vasquez's Labor Code claims will likely come from that office." (Beinborn Decl. ¶ 6.) Moreover, Vasquez's direct supervisor worked in the Santa Barbara office with him. (*Id.* ¶ 3.) Without explanation, Vasquez construes that these assertions refer to "[a]n unnamed branch manager and a vice president for Nevada/California[.]" (Opp. at 2 n.2.) Vasquez complains that not only are these witnesses not identified by name but also that defendant fails to establish by "evidence that the[se individuals] have more knowledge of D&K's policies or practices than any other witness or employee." (*Id.* at 2.) Even if their names have not been provided, the identities and relevance of these potential witnesses are evident by the nature of their very positions. *See*, *e.g.*, *Garlough v. Trader Joe's Co.*, No. 15-CV-1278 (TEH), 2015 WL 4638340, at *5 (N.D. Cal. Aug. 4, 2015)

---

It is unclear how this spreadsheet supports Vasquez's position. Although he faults defendant for "conspicuously omitting any reference to the more than 50 offices in more than 20 other states" (Opp. at 5), his counsel acknowledges that given this spread of purported class members across the country, it "can[]not be shown to benefit clearly from any increased convenience regardless of whether this litigation is venued in the Central District of California or the Northern District . . . ." (Rumberger Decl. ¶ 9) However, rather than making the point that there is no difference between the Northern District and the Central District, counsel's spreadsheet, assuming its accuracy, only serves to underscore the convenience of the Central District over the Northern District.

1 (rejecting plaintiff's argument that defendant did not sufficiently identify witnesses because it did
2 not provide their names where defendant explained "why the witnesses were important" which is
3 "more persuasive") (citation omitted). As a purported member of California's senior management
4 team, the Calabasas-based witness should have knowledge of the policy to classify loan officers as
5 exempt employees. Likewise, defendant presumably identified Vasquez's direct supervisor as
6 having personal knowledge pertinent to establishing that his actual work duties rendered him
7 exempt for FLSA and CLC purposes. Thus, defendant has come forth with sufficient information
8 concerning relevant potential witnesses in the Central District of California and the nature of their
9 testimony. Vasquez's objections therefore do not persuade.

10 Regarding non-party witnesses, Vasquez identifies Chee and his wife, from whom
11 Vasquez sourced the loan for the property located in the Northern District of California and who
12 themselves live therein. According to his declaration, Chee would testify to the fact that none of
13 his interactions with Vasquez occurred "in person outside his office." (Chee Decl. ¶ 6.) Vasquez
14 contends that Chee's testimony is relevant to show that the outside sales exemption, upon which
15 defendant relies as an affirmative defense, does not apply.

16 Under federal law, an outside salesperson is exempt where the employee: (1) makes sales
17 or "obtain[s] orders or contracts for services or for the use of facilities for which a consideration
18 will be paid by the client or customer," and (2) is customarily and regularly engaged away from
19 the employer's place of business. 29 C.F.R. § 541.500(a). Under California law, an employee is
20 considered an exempt outside salesperson if the person "customarily and regularly works more
21 than half the time away from the employer's place of business selling tangible or intangible items
22 or obtaining orders or contracts for products, services, or use of facilities." 8 C.C.R. §
23 11040(2)(M). Vasquez's misclassification theory therefore turns on the location where he, and
24 importantly others, "customarily and regularly" engaged or worked. Thus, the Court considers the
25 location of the majority of those individuals.[4]

---

[4] The existence of the pandemic and the increased use of remote appearances do not change the analysis. In-person depositions are the preferred course and will likely be used here give the procedural posture of this case and the rollout of the vaccine.

Although "the convenience of non-party witnesses is a more important factor than the convenience of party witnesses," *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009), Chee's anticipated testimony about where Vasquez did *not* engage or work for a single transaction could hardly be so important to the applicability of the exemption that it alone outweighs the convenience of all other individuals considered.

In sum, the convenience of the parties and witnesses weighs heavily in favor of the Central District of California.[5]

### C. EASE OF ACCESS TO THE EVIDENCE

"In assessing the ease of access to proof, courts look at the location of records and documents." *DeFazio v. Hollister Employee Share Ownership Trust*, 406 F. Supp. 2d 1085, 1091 (E.D. Cal. 2015) (citation omitted). "The moving party must show the location and importance of the records." *Id.* (internal quotation and citation omitted). "[I]n the age of electronically stored information, the ease of access to evidence is neutral [when] much of the evidence . . . will be electronic documents, which are relatively easy to obtain in any district." *See Epic*, 435 F. Supp. 2d at 1091 (internal quotation and citation omitted).

Defendant does not state specifically that all documents related to Vasquez's claims are located in the Central District of California. For his part, Vasquez argues that "[p]roof of the policies and practices, and the books and records of commissions earned are maintained and managed from D&K's Illinois headquarters[.]" (Opp. at 9.) Neither party provides a reason for the Court to conclude that any relevant records and documents are located in the Northern District. In any event, given that records could easily be complied electronically, if not already available in this format, this factor is neutral.

### D. FAMILIARITY OF EACH FORUM WITH THE APPLICABLE LAW

With regard to the familiarity of each forum with the applicable law, defendant states that "both the Northern and Central Districts of California are well acquainted with the federal and

---

[5] Vasquez's insistence that "the substance and the quality of any individual loan officer or corporate executive's testimony is of limited distinction for venue purposes as the litigation promises to be largely policy and data driven" (Opp. at 2; Rumberger Decl. ¶ 15) does not alter this conclusion.

9

state laws governing Vasquez's claims" (Motion at 6), which Vasquez does not dispute. Thus, this factor is neutral.

### E. FEASIBILITY OF CONSOLIDATION WITH OTHER CLAIMS (JUDICIAL EFFICIENCY)

Vasquez argues that consolidation is feasible "with but one pending state case in which no significant motions have been filed, and defense counsel here has substituted in to represent defendant." (Opp. at 10.) This single statement provides absolutely no information whatsoever (not even a citation) about this other purported case. Nor does plaintiff or his counsel draw the Court's attention to such a case in their declarations. As such, and given defendant's silence on this point, this factor is neutral.

### F. LOCAL INTEREST IN THE CONTROVERSY

Given that all but four of the 84 potential California class members and all but one of defendant's nine California offices are located in the Central District of California, the Court agrees with defendant that the Central District retains a stronger local interest in adjudicating the controversy. Vasquez has not pointed to any reason to suggest otherwise. This factor weighs in favor of transfer.

### G. RELATIVE COURT CONGESTION

Vasquez states that "[r]elative docket congestion between the Northern and Central Districts is not a factor" (Opp. at 10.), which defendant does not dispute. However, the Court itself is aware of the burden currently facing the Central District which has a significant number of vacancies and, as a result, has higher caseloads. Accordingly, this factor weighs against transfer.

### H. BALANCE OF FACTORS

While many of the factors weigh neutrally between the Northern and Central California, the more important factors, namely, the convenience of the parties and witnesses and local interest, weigh heavily in favor of the Central District of California. No factor weighs in favor of the Northern District of California other than the relative court congestion. Thus, the Court reluctantly concludes that the Central District of California is the more appropriate venue. Had there been more than a tenuous connection to this District, the Court would not feel compelled to further burden its colleagues to the south.

10

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the motion to transfer venue to the Central District of California. The Clerk of Court is directed to transfer this matter to the United States District Court for the Central District of California.

The Order terminates Docket Number 20.

**IT IS SO ORDERED.**

Dated: January 22 , 2021

                                          **YVONNE GONZALEZ ROGERS**
                                     **UNITED STATES DISTRICT COURT JUDGE**