1  CHRISTOPHER A. BRAHAM (SBN 293367)
   cbraham@mwe.com
2  BRIAN CASILLAS (SBN 303528)
   bcasillas@mwe.com
3  **MCDERMOTT WILL & EMERY LLP**
   2049 Century Park East
4  Suite 3200
   Los Angeles, CA  90067-3206
5  Telephone:  +1 310 277 4110
   Facsimile:   +1 310 277 4730
6
7  Attorneys for Defendant
   DRAPER AND KRAMER MORTGAGE
   CORP.
8
                  UNITED STATES DISTRICT COURT
9
                 CENTRAL DISTRICT OF CALIFORNIA
10
11
12  JOSE VASQUEZ, individually and on        Case No. 2:21-cv-00693-FMO-AS
    behalf of all those similarly situated,   Hon. Fernando M. Olguin
13
                 Plaintiff,                    **JOINT BRIEF REGARDING
14                                             DEFENDANT DRAPER AND
          v.                                   KRAMER MORTGAGE
15                                             CORP.'S MOTION FOR
    DRAPER AND KRAMER MORTGAGE                 SUMMARY JUDGMENT, OR IN
16  CORP.,                                     THE ALTERNATIVE, PARTIAL
                                               SUMMARY JUDGMENT**
                 Defendant.
17
18                                             Date: February 6, 2025
                                               time: 10:00 a.m.
19                                             Courtroom: 6D
20                                             *[Filed Concurrently with (1) Notice of
                                               Motion; (2) Joint Evidentiary Appendix;
21                                             (3) Statement of Uncontroverted Facts;
                                               and (4) [Proposed] Order]*
22
23                                             CLASS AND COLLECTIVE ACTION
24                                             Complaint filed: September 22, 2020
                                               FAC filed: June 3, 2021
25
26
27
28

McDermott Will & Emery LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

I.   Introductions ................................................................................................ 1

    A.   DKMC's Introduction ........................................................... 1
    B.   Plaintiffs' Introduction .......................................................... 2

II.   Factual Summaries ..................................................................................... 5

    A.   DKMC's Factual Summary .................................................. 5

        1.   DKMC's Loan Officer Employment Agreements Memorialize The Loan Officer's Covenant To Perform Their Job As An Outside Salesperson .......................................................... 5
        2.   Vasquez Confirms He Performed His Sales Work "Outside" ....... 6
        3.   DKMC Loan Officers In This Action ............................................ 8

    B.   Plaintiffs Factual Summary ................................................... 9

III.   DKMC's Legal Arguments and Vasquez's responses ..................................... 12

    A.   Vasquez's FLSA Claim (Count 1) Must Be Dismissed Because Of The Application Of The FLSA's Outside Sales Exemption ......................... 12

        1.   DKMC's Position ........................................................................ 12

            i.   At Minimum, DKMC Is Entitled To Summary Judgment On Vasquez's FLSA Claim Because He Regularly and Customarily Engaged In Outside Sales Duties ................. 13
            ii.   The Court Must Grant Summary Judgment On The FLSA Claim Asserted By All Plaintiffs Because Their Job Required Them To Customarily And Regularly Be Engaged In Sales Outside The Office ................................. 15

        2.   Plaintiffs' Position ....................................................................... 16

            i.   The FLSA's OSE Does Not Apply to Plaintiff Vasquez As He Was Not "Regularly and Customarily" Engaged in Outside Sales and Any Outside Work was Promotional or Merely Incidental to His Inside Sales Activities .............. 18
            ii.   For the Same Reasons, The FLSA's OSE Does Not Apply to the Remaining Opt In Plaintiffs Who Likewise

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

JOINT BRIEF REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Performed Outside Work that was Promotional or Merely Incidental to Critical Inside Sales Activities ...................... 25

B. Vasquez's California Wage And Hour Claims (Counts 2 Thru 5) Are Subject To Dismissal Because Of The Application Of The California Labor Code's Outside Sales Exemption Applies .................................... 28

    1. DKMC's Position ............................................................ 28
    2. Plaintiffs' Position .......................................................... 32

C. Vasquez's Business Expense Claim (Count 6) Is Subject To Dismissal ................................................................................. 35

    1. DKMC's Position ............................................................ 35
    2. Plaintiffs' Position .......................................................... 36

D. Vasquez's Derivative Claims (Counts 7 and 8) Are Subject To Dismissal ................................................................................. 38

    1. DKMC's Position ............................................................ 38
    2. Vasquez's Position ........................................................... 38

IV. Conclusions ................................................................................ 38

A. DKMC's Position ............................................................................ 38
B. Plaintiffs' Position .......................................................................... 39

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

JOINT BRIEF REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*Aleksick v. 7–Eleven, Inc.*,
205 Cal.App.4th 1176 (2012) ..................................................................36

*Anderson v. Mt. Clemens Pottery Co.*,
328 U.S. 680 .......................................................................................16, 17

*Aschenbrenner v. Dolgencorp, Inc.*,
2011 U.S. Dist. LEXIS 60097 ............................................................25, 26

*Aschenbrenner v. Dolgencorp, Inc.*,
2011 WL 2200630 (D. Neb. 2011) ..........................................................15

*Bigelow v. RKO Radio Pictures*,
327 U.S. 251 ...............................................................................................17

*Bothell v. Phase Metrics, Inc.*,
299 F.3d 1120 (9th Cir. 2002) ..................................................................16

*Buglak v. Wells Fargo Bank, N.A.*,
2017 U.S. Dist. LEXIS 113742 ..................................................................23

*Buglak v. Wells Fargo Bank, N.A.*,
2017 WL 3116137 (E.D. Pa. 2017) ..........................................................13

*Celotex Corp. v. Catrett*,
477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986) ...................2, 15

*Christopher v. SmithKline Beecham Corp.*,
132 S. Ct. 2156 (2012).............................................................................14

*City of Sacramento v. Public Employees Retirement System*,
229 Cal. App. 3d 1470, 280 Cal. Rptr. 847, 91 Cal. Daily Op. Service 3404, 91 D.A.R. 5423, 13 Employee Benefits Cas. (BNA) 2494 Wage & Hour Cas. (BNA) 628, 1991 Cal. App. LEXIS 452 (Cal. App. 3d Dist. 1991) ..............................31

*Cleveland v. City of Los Angeles*,
420 F.3d 981 (9th Cir. 2005) ...................................................................16

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

JOINT BRIEF REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*Coleman v. Quaker Oats Co.*,
232 F.3d 1271 (9th Cir. 2000) ........................................................33

*Dixon v. Prospect Mortg., LLC*,
11 F. Supp. 3d 605 (VA Dist. 2014)...................................4, 11, 16

*Donovan v. Nekton, Inc.*,
703 F.2d 1148 ......................................................................16

*Encino Motorcars, LLC v. Navarro*,
138 S. Ct. 1134 (2018)...........................................................11

*Espinoza v. Warehouse Demo Services, Inc.*,
86 Cal. App. 5th 1184 .......................................................*passim*

*Hall v. United States*,
314 F. Supp. 1135 (N.D. Cal. 1970)...........................................13

*Hanz v. Prospect Mortg., LLC*
11 F.Supp.3d 612 (E.D. VA 2014) ..........................4, 13, 22, 23

*Lynn's Food Stores, Inc. v. United States*,
679 F.2d 1350 (11th Cir. 1982) ...............................................24

*Mireles v. Paragon Sys., Inc.*,
2014 WL 4385453 (S.D. Cal. Sept. 4, 2014) ..........................33, 34

*Moore v. Int'l Cosmetics & Perfumes, Inc.*,
2016 U.S. Dist. LEXIS 195053 ............................................31, 32

*Moore v International Cosmetics and Perfumes Inc.*,
2016 WL 3556610 (C.D. Cal. June 2016)...............................28, 29

*Olivo v. GMAC Mortgage Co.*,
374 F. Supp. 2d 545 (E.D. Mich. 2004) ....................................20

*Palmer v. Connecticut R. Co.*,
311 U.S. 544 ......................................................................17

*Price v. Starbucks*,
192 Cal. App. 1136 (2011) .......................................................36

*Ramirez v. Yosemite Water Co.*,
20 Cal. 4th 785 (1999)..........................................................27

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

JOINT BRIEF REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*Reyes v. Goya Foods, Inc.*,
   2013 U.S. Dist. LEXIS 195853 ............................................................26

*Reyes v. Goya Foods, Inc.*,
   549 F. App'x 876 (11th Cir. 2013) ......................................................15

*S.E.C. v. Seaboard Corp.*
   677 F.2d 1301 (9th Cir. 1982) ............................................................15

*Safran v. United Health Prods.*,
   2020 U.S. Dist. LEXIS 93632 .............................................................17

*Schultz v. Sundberg*,
   759 F.2d 714 (9th Cir. 1985) ..............................................................27

*Stuart v. Radioshack Corp.*
   (N.D. Cal. 2009), 259 F.R.D. 200, 2009 U.S. Dist. LEXIS 84804 ...................36

*Stuart v. Radioshack Corp.*
   (N.D. Cal. 2009), 641 F. Supp. 2d 901, 2009 U.S. Dist. LEXIS 41658 ..5, 34, 35

*Taylor v. Waddell & Reed, Inc.*,
   2012 WL 10669 (S.D. Cal. 2012).................................................12, 22

*Vinole v. Countrywide Home Loans, Inc.*,
   246 F.R.D. 637 (S.D. Cal. 2007), aff'd, 571 F.3d 935 (9th Cir. 2009) .............31

*Weingarten v. Wells Fargo Bank, N.A.*,
   2018 WL 2163646 (D. Mass 2018) ...................................................13

*White v. Winn-Dixie Montgomery, LLC*,
   2017 U.S. Dist. LEXIS 18440 .............................................................25

*White v. Winn-Dixie Montgomery, LLC*,
   2017 WL 529298 (N.D. Ala. 2017)......................................................14

**Statutes**

29 U.S.C. § 207(a)(1)......................................................................2, 11, 15

29 U.S.C. § 213(a)(1)......................................................................3, 11, 15

Cal. Lab. Code § 2802 ........................................................................5

Cal. Lab. Code § 2802(a) ...................................................................33

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

v

**Other Authorities**

29 C.F.R. § 541.500 ............................................................................................11, 16

29 C.F.R. § 541.500(b) ...............................................................................................21

29 C.F.R. § 541.502 .............................................................................11, 16, 28, 31

29 C.F.R. § 541.503 ...................................................................................................21

29 C.F.R. § 541.701 ...................................................................................................22

69 Fed. Reg. 22,160, 22,163 (Apr. 23, 2004) ...........................................................21

Fed. R. Civ. P. 56 ..................................................................................................2, 15

JOINT BRIEF REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# I. INTRODUCTIONS

## A. DKMC's Introduction

This wage and hour case concerns Plaintiff Jose Vasquez's ("Vasquez") claim that: (1) Defendant Draper and Kramer Mortgage Corp. ("DKMC") misclassified he and twenty-four (24) other loan officers who remain opted into the FLSA action (collectively known as "Plaintiffs"); (2) he, as an individual only, was misclassified under California's OSE; and (3) DKMC failed to reimburse him for all necessary business expenses. Vasquez's claims are all without merit and subject to summary judgment.

*First*, Loan Officers sign DKMC agreements acknowledging that they are being hired for an outside sales position. In other words, there is a memorialized expectation by all parties that a Loan Officer's job is exempt. Loan Officers are responsible for developing their own home mortgage business, which inherently requires them to routinely visit prospective and existing clients and referral sources out in the field. Caselaw is clear: engaging in such duties for one hour and one day a week more than satisfies the FLSA's OSE. To conclude Plaintiffs meet this low threshold, the Court need look no further than Vasquez's own testimony conceding that he took clients out for a meal or an event at least one to two times a week for almost the entire duration of his employment. A fair reading of the FLSA's OSE demands a holding that it applies not only to Vasquez but all other purportedly similarly situated Loan Officers.

*Second*, the California Supreme Court has explicitly warned courts that California's OSE differs from the FLSA's OSE in many regards and therefore analysis of the FLSA OSE cannot be relied on as a useful guide to adjudicate California's OSE. One difference that is significant to this Action is that, unlike the FLSA's OSE, California's OSE does not expressly foreclose on work from a home office being deemed "outside". In the event the Court wants to continue to retain supplemental jurisdiction of Vasquez's individual state law claims after dismissing his FLSA claim (i.e. – the claim giving rise to this Court's subject matter jurisdiction), the Court need

McDermott Will & Emery LLP
Attorneys at Law
San Francisco

simply follow the principles arising out of caselaw holding that, under California's OSE, work must be deemed performed "outside" when the employer has no significant control over the premises where the employee performs their work. Vasquez's admissions that he spent a majority of his time working from home and under no DKMC oversight or control confirms the obvious: California's OSE applies to him.

*Third*, Vasquez's expense reimbursement claim arising from a contention that he has unreimbursed cellphone, home internet, and personal vehicle expenses must be dismissed. Vasquez's decision to use his personal cellphone and home internet for business purposes did not arise out of a DKMC mandate. He chose to use his personal cellphone and home internet because of personal convenience, not because it was necessary. At all times, DKMC provided Vasquez with technology on his laptop to make telephone calls and a space in its Santa Barbara office to work. Vasquez's contention about unreimbursed personal vehicle expenses must be dismissed because he does not actually claim a loss and, in any event, DKMC provided him with a means to submit reimbursement requests for said expenses. Under these facts, DKMC cannot be held to have actual or constructive knowledge of personal vehicle expenses when it was Vasquez who failed to utilize the Company's reimbursement program.

For each of these aforementioned reasons, which are discussed more thoroughly herein, DKMC respectfully requests the Court to issue an order granting its motion for summary judgment.

## B.    **Plaintiffs' Introduction**

Defendant's Motion for Summary Judgment must be denied.

Defendant fails to satisfy its burden to show there are no genuine issues of material fact in dispute and that it, as the moving party, is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed.2d 265, 273-74 (1986).

The Motion fails to prove that Plaintiffs are subject to the FLSA's outside sales exemption. Under the FLSA an employer must pay an employee one and a half times

the employee's usual hourly wage for all hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). This requirement does not apply, however, when the employee in question is subject to the FLSA's outside sales exemption. *See* 29 U.S.C. § 213(a)(1). The **employer bears the burden** of proving that the exception applies to a particular employee and must be able to meet this burden on a week by week basis.

Plaintiff Jose Vasquez and the remaining Plaintiff Loan Officers consistently testify that their primary role was to originate, prepare and submit residential loan applications *almost exclusively from their DKMC or home office*s- sending and receiving communications via phone, email, fax and mail.[1] The only conceivably sales "related" activity that Plaintiff Vasquez arguably did was to leave the office for lunch, at most once or twice a week *some* weeks, for 30 or 45-minutes.[2] Plaintiff testified that these meals were not "sales," but rather a "PR function" he did to promote DKMC.[3]

Defendant's Motion fails. Defendant has not shown that Plaintiffs spent sufficient time on outside sales tasks to qualify for the exemption, both in terms of the time spent and the quality of the work performed.

Plaintiff Vasquez testified that he spent at most 2% of his time **away** from the office.[4] As discussed below, while there is no set minimum percentage or amount of time for the FLSA's outside sale exemption, none of the cases cited in Defendant's Motion involved employees who spent as little time away from the office as Vasquez.

The Motion also fails because what minimal time was spent away from the office (even assuming *arguendo* Defendant's characterization of eating lunch as "sales

---

[1] JEA Exhibits 4-32, ¶¶6-12 in each and every one of Plaintiffs' 29 Declarations;

[2] UF 19; JEAEx.1, p. 24-25, Vasquez Depo. 122:20-123:8

[3] JEA Ex.1, Vasquez Depo. 120:13-22

[4] JEA Exhibit 31, p.747 (Vasquez) ¶12 "I worked over **97% of my time inside** the office."
*See also:* JEA Exhibit 26, p.654 ¶12 "I worked over **98% of my time** inside the office." (Rodriguez); JEA Exhibits 4-25,27-30,32, ¶12 "I worked **99%** of my time inside the office"

JOINT BRIEF REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

related") was promotional in nature. It was nothing more than a lunch or meal delivered to promote the company. Plaintiff testifies that he rarely met with a current client, and that in any event, these meals were not critical to the sales process and cannot turn this clearly inside sales job into an outside sale exempt position.

The cases cited by Defendant do not support such a conclusion. When some of the sales activities "take place at a fixed site and others take place outside of a fixed site, the employee is properly classified as an outside sales employee **if the activities** occurring outside of the office **are critical to the sales process** and occur on a **consistent** basis." *Dixon v. Prospect Mortg., LLC*, 11 F. Supp. 3d 605, 610 (VA Dist. 2014)(emphasis added). "[T]he pertinent inquiry is whether the employee performs **tasks critical to the sales process** away from the office[5] on a greater than occasional basis." *Hanz v. Prospect Mortg., LLC* 11 F.Supp.3d 612, 620 (E.D. VA 2014) for (Emphasis Added). "It is the nature of the time spent outside the office, rather than the amount of time, that drives the Court's conclusion. A weighty portion of the indispensable components of Plaintiff's sales efforts were concentrated in the outside period." *Id*., at p. 620.

Defendant's Motion similarly fails to prove that Plaintiff is subject to the California's outside sales exemption. In fact, the California OSE's definition of the employer's place of business is broader than the FLSA's definition. While it is true the California definition does not expressly state that a home office constitutes the employer's place of business, **Defendant does not cite a single case where a court deemed home office work to be "outside sales activity."**

This is because the California OSE's definition of the employer's place of business is broad, including locations whether or not owned or controlled by the employer. *Espinoza v. Warehouse Demo Services, Inc*., 86 Cal. App. 5th 1184, 1192.

---

[5] JEA Exhibits 4-32, ¶12 in nearly every other Plaintiff Declaration, "…[meeting] outside the office was a rare occasion, certainly not indispensable for any of my loans to close, nor was it critical to my loan officer function."

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

Here, Defendant did not require Plaintiff or any other Loan Officer to come into the office, other than for rare sales meetings. (UF D4; JEA pp. 253, Beinborn Dec., Ex. 5, § 2.4; JEA 266-67, Vasquez Dec., ¶ 6.). Defendant decided whether or not to track or require Plaintiff and its Loan Officers to track or report their hours. DKMC set Defendant decided whether or not Plaintiff would track and report his hours. DKMC's expectations in its policies, the employment agreement and performance evaluations, were entirely and solely "performance" based – not "location" based in any way.

Finally, Defendant's Motion also fails to prevail on the expense reimbursement claim. Cal. Lab. Code Section 2802 focuses "not on whether an employee makes a request for reimbursement but rather on whether the employer either knows or has reason to know that the employee has incurred a reimbursable expense; if the employer does, it must exercise due diligence to ensure that each employee is reimbursed." *Stuart v. Radioshack Corp.* (N.D. Cal. 2009), 641 F. Supp. 2d 901, 2009 U.S. Dist. LEXIS 41658. The evidence is clear that Defendant knew[6] or should have known that Plaintiff was incurring cell phone and home office related expenses, publishing the Loan Officer's personal cell phone numbers on Defendant's controlled websites, and directing Loan Officers during the Covid pandemic in particular to work from home when possible.

## II.      **FACTUAL SUMMARIES**

### A.      **DKMC's Factual Summary**

#### 1.      **DKMC's Loan Officer Employment Agreements Memorialize The Loan Officer's Covenant To Perform Their Job As An Outside Salesperson**

DKMC's Loan Officers sign Employment Agreements memorializing their

---

[6] D&K's website provides the public the personal cell phone numbers of all currently employed Loan Officers, directing customers to contact Plaintiffs' office or mobile number, *e.g* JEA Ex.4, p.298-299 (Altpeter); JEA Ex.9, p.380-381 (Cron); JEA Ex.25, p.648-649 (Perez); JEA Ex.26, p.680-681 (Rodriguez)

JOINT BRIEF REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

understanding that their job calls for them to originate mortgage loan transactions to meet their annual sales production goals. (UF D1; Declaration of Karla Beinborn at Dck. 57-4 ("Beinborn Dec."), Ex. 5 § 2.4; Declaration of Jose Vasquez at Dck. No. 48-1 ("Vasquez Dec."), JEA 266-67, ¶ 6.).  As memorialized in the Loan Officer Employment Agreement, Loan Officers "source and develop new business" by creating and maintaining relationships with loan referral sources, such as real estate agents, real estate attorneys, financial planners, estate attorneys, and stockbrokers. (UF D2; JEA pp. 252-53, Beinborn Dec., Ex. 5 § 2.4; JEA 266-67, Vasquez Dec., ¶ 6.). Critically, DKMC Loan Officers memorialize that they "understand[] the Department of Labor's definition and requirements to work as an outside sales representative" and understand they are supposed to perform their duties consistent with an "outside sales position." (UF D3; JEA pp. 252-53, Beinborn Dec., Ex. 5, § 2.4; JEA 266-67, Vasquez Dec., ¶ 6.). Consistent with this, DKMC does not require Loan Officers to be physically present at their respective branches, except "to attend periodic sales meetings." (UF D4; JEA pp. 253, Beinborn Dec., Ex. 5, § 2.4; JEA 266-67, Vasquez Dec., ¶ 6.).

To encourage Loan Officers to develop their unique business streams, DKMC provides Loan Officers, such as Vasquez, with annual marketing allowances and provides them with discretion to spend as they see fit—including taking referral sources out to lunch, sponsoring a golf event, to traditional advertising.  (UF D5; *See* JEA pp. 255*,* Beinborn Dec., Ex. 5, § 3.1(iv); JEA pp. 240-241, Beinborn Deposition ("Beinborn Depo."), 56:7-13; 68:1-17.).

### 2.    Vasquez Confirms He Performed His Sales Work "Outside"

DKMC employed Plaintiff Jose Vasquez as a Loan Officer from August 28, 2018, until July 23, 2020, and assigned him to its Santa Barbara office.  (UF D6; JEA pp. 11, Beinborn Dec. ¶ 9; Vasquez Deposition ("Vasquez Depo.") 64:20-22.) Vasquez never recorded the amount of hours he worked each day.  (UF D7; JEA pp. 13-14, Vasquez Depo. 70:22-71:8.)  He professes that "there is no typical day" for a

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

DKMC Loan Officer and that some days he could start at 6:00 a.m. others it "could likely start later on at 8:00 or 9:00 o'clock" and that maybe he would work until "6:00 or 7:00 at night". (UF D8; JEA pp. 17-19, Vasquez Depo. 81:20-83:5.) DKMC provided Vasquez with a laptop that included software called RingCentral, which permitted him to make phone calls (UF D9; JEA pp. 20, Vasquez Depo. 100:6-17.) But Vasquez opted to mainly use his personal cell phone to make calls because it was easier to use. (UF D10; JEA pp. 20, Vasquez Depo. 100:6-17.) Although Vasquez had a designated workplace in DKMC's Santa Barbara office, Vasquez reports that he spent a majority of his time working from home where he did not physically work side-by-side with any other DKMC employee or supervisor. (UF D11; JEA pp. 12, 16, Vasquez Depo. 66:3-11; 76:2-13.) Working from home allowed him the freedom to do personal chores during the day such as occasionally taking his daughters to school. (UF D12; JEA pp. 15, Vasquez Depo 73:3-14.) However, at relevant all times, Vasquez was permitted to go into the DKMC Santa Barbara as he saw fit because DKMC never closed the office – not during the pandemic or otherwise. (UF D13; Beinborn Depo. 125:8-19.)

DKMC paid Vasquez on a commission-only basis, as he earned commission on each loan he originated and closed. *Id.* ¶ 11 & Ex. 5. DKMC also provided Vasquez with a $8,000 marketing allowance to assistance in his business development efforts. (UF 14; JEA pp. 23, Vasquez Depo. 119:4-8.) Vasquez utilized his marketing allowance for business development purposes as he submitted *at least* 182 meal receipts for reimbursement during the course of his DKMC tenure. (UF D15; JEA pp. 70, 26-27, 28-32, 33-35, 36-40, 40-42, 43-47, 48-51, 52-55, 56-61, 61-64, 64-68, 69-73, pp. 106-235, Vasquez Depo. 182:14-17, 127:14-128:17, 131:9-135:11, 139:1-141:21, 142:1-146:18, 146:20-148:11, 150:3-154:9, 156:23-159:19, 164:8-167:15, 168:3-173:5, 173:19-176:6, 176:12-180:11, 181:17- 185:7, Exs. 7-18.) Vasquez admits that he spent time outside of the DKMC office and his office engaged in business development activities such as attending DKMC sponsored golf tournaments

and mixers. (UF D16; Vasquez Depo. 66:3-11.)  *Vasquez notably admits that he took clients out for a meal or an event at least one to two times a week between November 2018 to August 19, 2019, and concedes that he cannot dispute the notion that this practice continued for the remainder of his DKMC employment*.  (UF 17; JEA pp. 70, 26-27, 28-32, 33-35, 36-40, 40-42, 43-47, 48-51, 52-55, 56-61, 61-64, 64-68, 69-73, pp. 106-235, Vasquez Depo., 180:12-181:16, 182:14-17, 127:14-128:17, 131:9-135:11, 139:1-141:21, 142:1-146:18, 146:20-148:11, 150:3-154:9, 156:23-159:19, 164:8-167:15, 168:3-173:5, 173:19-176:6, 176:12-180:11, 181:17- 185:7, Exs. 7-18.)

Vasquez concedes that he cannot dispute the notion that the practice of taking clients out for a meal or an event at least one to two times a week continued even after August 19, 2019.  (UF 18; JEA pp. 68-69, Vasquez Depo. 180:12-181:16.)  Vasquez admits that it took him 30-45 minutes each time he took a client or referral source out for a meal.  (UF 19; JEA pp. 24-25, Vasquez Depo. 122:20-123:8.)

DKMC ultimately terminated Vasquez's employment because it concluded that he engaged in unauthorized behavior, such as submitting rush requests without prior approval, submitting loan applications with missing documents, and failing to receive consent from applicants prior to submitting loan disclosures. (UF D20; JEA pp. 249, ¶¶ 13-14, Beinborn Dec, ¶¶ 13-14, Ex. 7.).  Over of the course of Vasquez's near two-year tenure, DKMC paid him in excess of $350,000.   (UF 21; JEA pp. 21-22, 74-103, Vasquez Depo. 114:19-115:15, Ex. 6 (testimony confirming that wage statements denoted as Exhibit 6 are accurate with respect to what DKMC paid to him).).

### 3.    DKMC Loan Officers In This Action

During the Maximum Collective Action Period, i.e. – April 19, 2019 to May 1, 2021, DKMC employed Loan Officers at each of its sixty (60) branches across twenty (20) states and Washington DC. (Dck. 57-3, ¶ 4.).  Pursuant to the Court's March 17, 2022, Order conditionally certifying the FLSA's collective action claim, DKMC provided Plaintiffs' counsel with a collective action list that included the names and contact information of 275 DKMC employees so that they could receive notice of this

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

lawsuit.   (UF 22; JEA pp. 3, ¶ 4 ("Braham Decl."), ¶ 4.)   Of the 275 individuals on the list for notice, to date only twenty-four (24) remain opted into the FLSA Action (hereinafter referred to collective as "Plaintiffs").  *See* Dck. *generally*.  In other words, only 8.7% of the relevant DKMC Loan Officer population feign that they should have been classified as non-exempt in lieu of exempt pursuant to the outside salesperson exemption.

### B.    Plaintiffs Factual Summary

NOTHING in any DKMC employment contract requires *any* Loan Officer to be "**away**" from the office – *ever* – a prerequisite for the claimed exemption to apply. Moreover, it is undisputed that no loan officer was "away" more than 2% of the time.

The Department of Labor definition is clear and unambiguous: "The employee must be customarily and regularly **engaged** **away** from the employer's place or places of business."   Indeed, the FLSA exemption is *explicit -- excluding* from its scope precisely the type of work actually performed by DKMC loan officers who universally testify to nearly 99% of their time being spent on the computer or phone:  "Outside sales does **NOT** include sales made by telephone or the internet."[7]  No loan officer nor defense witness has claimed that loan sales were conducted or originated **in person**. Rather, loan officers used internet programs to originate, document, substantiate and complete home loan sales exclusively using DKMC's remote application process.

Finally, the FLSA is unequivocal in the scope of the "Outside Sales Exemption" as **excluding** a home office from its definition of "**away**": "**Any fixed site**, whether **home** or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business."[8]

Plaintiff Vasquez was employed as a loan officer by Draper and Kramer Mortgage Corp. (DKMC) in California, for nearly two years from August 31, 2018

---

[7]    "unless    used    merely    as    an    adjunct    to    **personal**    calls." https://www.dol.gov/agencies/whd/fact-sheets/17f-overtime-outside-sales

[8] *Id.*

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

through July 23, 2020. (JEA Ex.31, p.745,Vasquez Decl. ¶ 3). He was tasked with originating, preparing and submitting residential mortgage loan applications; this is the primary function set forth in the DKMC Loan Officer Job Description. *Id.*, ¶ 4.

His "primary duty was to provide residential property loan origination services to borrowers by soliciting and preparing their mortgage loan applications through DKMC's processors, ultimately submitting the applications to DKMC's underwriters who were solely responsible for deciding whether or not to approve the borrower's loan application for funding by DKMC or through DKMC's network of investors." Id., ¶ 5. Plaintiff Vasquez and the remaining Plaintiffs all performed their duties nearly exclusively through communications via the internet, telephone, fax and mail from a DKMC office or home office. *Id.*, ¶ 6.

Plaintiff testified that "it was extremely rare for me or any D&K loan officers to my knowledge, to ever meet in person with referral sources or with clients to work on their loan applications, as everything was done remotely by phone or computer – such as using email, text or Zoom to maintain social distance during the Covid-19 pandemic." (JEA Ex.31, p.746 , Vasquez Decl. ¶10.)

The parties' employment contracts operative during the claim period (then-titled "Loan Officer Sales **Compensation** Agreement") impose absolutely no requirement that the Loan Officer perform ANY tasks "AWAY" from the office.   "**Where**" Plaintiffs were expected to perform their work is never stated anywhere. The word "**exempt**" NEVER appears anywhere in the contracts. The sole reference *anywhere* to **"outside sales"** appears buried in the 9-page compensation agreement -- in subsection 2.4 "Production Requirements"[9], obliquely referencing "outside sales" (without defining it) -- and is contrary to the actual reality of Plaintiffs' work

---

[9] (JEA Ex.31, p.764 , Vasquez Decl. attachment) "2.4 Production Requirements. The Loan Officer does hereby acknowledge that this Agreement is that of an outside sales position and fully understands the Department of Labor's definition and requirements to work as an outside sales representative."

JOINT BRIEF REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

experience which neither caused them to be customarily nor regularly engaged away from their DKMC or home office where they performed over 98% of their work preparing mortgage loan applications.[10] (Vasquez himself was *at most* was away from the office 2% of his workweek: 30 to 45 minutes once or twice in a 50-hour week = 2% to 2½ % of his time) *some* weeks, and none other weeks.[11] And most Loan Officers **almost never** left the office.  The 24 Loan Officer Plaintiffs before this Cou5t in *this* action[12] had no input into the adhesion contracts vaguely referencing "outside sales" -- but trusted their employer to classify them fairly.

Specifically, Plaintiff Vasquez testified that it was not part of his job to take people out to lunch and that his "marketing budget" was "more a PR function to promote [Draper and Kramer] generally." (JEA Ex.1 (Vasquez Depo. 120:13-22).

Plaintiff testified that frequency of lunches "could vary" and "could be a couple of times a week. There is (sic) weeks where I don't do it… there is no set pattern." Ex. 1 at 27 (131:1-4). Plaintiff testified that "I need to eat so I would just say "Hey, by the way, do you want to grab something?" Ex. 1 at 31 (135:1-11).

Plaintiff testified that he only rarely had lunch with a realtor – if ever during the Covid pandemic -- but would instead "buy lunches for them: order pizza, have it delivered, things like that, or do, like, DoorDash, have food delivered to their place of business…**because everything was on lockdown.**" Vazquez Depo., 135:12-136.

Finally, on the rare or sporadic occasion when Plaintiff might cross paths with a referral source "away" from his office, there is no evidence that doing so *ever* met

---

[10] JEA Exhibit 31, p.747, ¶12 "I worked over 97% of my time inside the office."
*See also*: JEA Exhibits 4-25, 27-30, 32, ¶12 "I worked 99% of my time inside the office."

[11] UF 19; JEA Ex.1, p.24-25, Vasquez Depo. 122:20-123:8

[12] Following the Court's 3/2/2023 order [Doc. 141] staying this case, 25% of the opt-in members withdrew from the collective action to pursue direct litigation, exclusively under state law, where their claims are now in arbitration -- dispositive motions scheduled to be heard March 20, 2025.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

the exemption threshold of being "critical" to the sales process, or an "indispensable component" of the sales effort (as in the authority cited by Defendant here) or that being "away" was in any way "necessary" to Plaintiff's sales activity.  Rather, all ***sales activity was performed at the office***.

## III.       DKMC'S LEGAL ARGUMENTS AND VASQUEZ'S RESPONSES

### A.    Vasquez's FLSA Claim (Count 1) Must Be Dismissed Because Of The Application Of The FLSA's Outside Sales Exemption

#### 1.    DKMC's Position

The FLSA generally requires employers to: (1) pay employees minimum wage for all hours worked; and (2) pay time-and-a-half for all hours worked in excess of 40. *See* 29 U.S.C. § 207(a)(1).  These rules do not apply to employees who are subject to the FLSA's OSE.  *See* 29 U.S.C. § 213(a)(1).  To qualify for the FLSA's OSE, the employee must: (a) have a primary job duty of making sales; and (b) be "customarily and regularly" engaged in making sales away from "the employer's place of business." 29 C.F.R. § 541.500.  Unlike the OSE under California law, the OSE under the FLSA uniquely defines "the employer's place of business" to expressly include the employee's home office.  29 C.F.R. § 541.502.

The question of how an employee spends his time is a question of fact, while the question of whether his activities fall within an exemption is a question of law. *Dixon v. Prospect Mortg.*, LLC, 11 F. Supp. 3d 605, 610 (E.D. Va. 2014) ("The question of how an employee spends his time is a question of fact, while the question of whether his activities fall within an exemption is a question of law.").  Significantly, when resolving questions of law pertaining to whether an employee satisfies any part of the OSE, the Supreme Court demands the OSE to be given a "fair reading" and prohibits courts from construing the OSE exemption narrowly.  *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) ("We thus have no license to give the exemption anything but a fair reading.").

///

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

In this case, Plaintiffs concede that the first prong of the OSE test is satisfied: Plaintiffs' have a primary job duty of making sales. (Dck. No. 138, ¶ 2.) Plaintiffs only dispute the application of the OSE solely based on a claim that they did not "customarily and regularly" perform sales related activities outside the employer's place of business. Plaintiffs' position is erroneous: the OSE applies to all of them because their job responsibilities expressly called for them to perform sales work "customarily and regularly" outside of the employer's place of business. The fact Vasquez, **the lead plaintiff**, admits that, among other things, he spent one-to-two days outside of the office to meet with a business referral source confirms the application of the OSE not just to him but to everyone similarly situated to him.

For the reasons discussed below, summary judgment on the FLSA claim must be granted.

### i. At Minimum, DKMC Is Entitled To Summary Judgment On Vasquez's FLSA Claim Because He Regularly and Customarily Engaged In Outside Sales Duties

The phrase "customarily and regularly" is **not** a "majority of the time" test. *Taylor v. Waddell & Reed, Inc.*, 2012 WL 10669 at *3 (S.D. Cal. 2012) (emphasis added). In fact, **there is no suggestion in the regulations** that work performed customarily or regularly must occupy **any given percentage** of an employee's weekly working hours. *See* DOL Wage Hour Op. Ltr. No. FLSA2007–2 at 3. As a result, employees engaged in sales-related activities away from their employer's place of business for "one or two hours a day, one or two times a week" more than satisfy the "customarily and regularly" prong of the FLSA. *See, e.g., Taylor,* 2012 WL 10669, at *3 (S.D.Cal. 2012) ("[S]elling or sales related activity outside the office 'one or two hours a day, one or two times a week' satisfie[s] the test for the exemption." (citation omitted)); DOL Wage & Hour Op. Ltr. No. FLSA2020–6 at 3.

Indeed, courts adjudicating facts nearly identical to the case before us routinely hold that mortgage loan officers who regularly meet with referral sources, such as

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

JOINT BRIEF REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

realtors, outside of the employer's place of business satisfy the OSE's "customarily and regularly" prong. *Hantz v. Prospect Mort., LLC*, 11 F. Supp. 3d 612, 620 (E.D. Va. 2014) (holding that the plaintiff satisfied the OSE because his regular outside sales "undertakings included **meeting with realtors**, distributing fliers, attending open houses to network with potential customers, and giving seminars"); *Weingarten v. Wells Fargo Bank, N.A.*, 2018 WL 2163646, *1 (D. Mass 2018) (holding that a junior mortgage consultant who admitted to having **one outside sales meeting a week with realtors** satisfied the OSE); *Buglak v. Wells Fargo Bank, N.A.*, 2017 WL 3116137 (E.D. Pa. 2017) (referencing time spent at open houses, **follow-up meetings with realtors**, and similar outside activities).

Here, Vasquez's Employment Agreement memorializes his agreement that his DKMC Loan Officer position is that of an outside salesperson as defined by the DOL and his covenant to perform "work as an outside sales representative". (UF D3.) His memorialized job responsibilities explicitly called for him to work "in a business development capacity, networking and calling on Realtors, Real Estate Attorney's, [and] Builders." (UF D2.) This was not just lip service: Vasquez's testimony confirms that he "regularly and customarily" did these business development activities **outside of the office**. Specifically, Vasquez testified that he spent time outside engaged in various business development functions such as: (1) DKMC golf tournaments; (2) co-sponsoring networking mixers entitled "Cocktails in Havana"; and most frequently (3) taking clients and prospective clients to lunch and dinner at least one to two times a week and oftentimes more. (UF D15-D19.) Vasquez cannot dispute that his practice of taking clients out for a meal or an event at least one to two times a week went on for almost the entirety of his employment. (UF D18.) Indeed, Vasquez's FAC alleges, and therefore concedes, he used his personal vehicle to carry out his job responsibilities, which in turn concedes his job required him to be "outside". *See* FAC, ¶ 17; *Hall v. United States*, 314 F. Supp. 1135, 1137–38 (N.D. Cal. 1970) (holding that an "allegation in the Complaint is a binding judicial admission").

In sum, Vasquez is subject to the FLSA's OSE when there can be no reasonable dispute that: (1) his primary duty is sales (Dck. No. 138, ¶ 2); (2) he never recorded his time (UF D7); (3) he "had no typical day" (UF D8); and (4) he routinely engaged in business development activities with referral sources away from DKMC's place of business (UF 17). A "fair reading" of the FLSA's OSE under these facts demands an order granting summary judgment on FLSA claim because Vasquez, an individual who earned in excess of $350,000 over the course of his nearly two-year tenure with DKMC (UF 21), is hardly an individual the FLSA was designed to protect. *See Christopher v. SmithKline Beecham Corp.,* 132 S. Ct. 2156, 2173 (2012) ("Petitioners—each of whom earned an average of more than $70,000 per year… are hardly the kind of employees that the FLSA was intended to protect.").

ii. **The Court Must Grant Summary Judgment On The FLSA Claim Asserted By All Plaintiffs Because Their Job Required Them To Customarily And Regularly Be Engaged In Sales Outside The Office**

Assuming Plaintiffs can meet ***their burden*** of demonstrating that certification of the FLSA collective remains appropriate and withstand the challenge associated with the concurrently filed motion for decertification, summary judgment on the claims asserted by all Plaintiffs is appropriate.

In this case, Plaintiffs all signed employment agreements memorializing their agreement to perform their job consistent with the DOLs definition of an outside salesperson. (UF D.) The Court need look no further than Vasquez, ***the lead plaintiff***, to conclude that DKMC Loan Officers did in fact perform their job consistent with that covenant. The mere fact that Plaintiffs' counsel may point to some Plaintiffs who did not perform their job consistent with what they covenanted to do in their respective employment agreements does not save them from the application of the FLSA's OSE. *White v. Winn-Dixie Montgomery, LLC*, 2017 WL 529298, at *13 (N.D. Ala. 2017) ("Plaintiff's failure to properly perform his job duties simply does not remove him from the executive exemption."). Stated another way, a small portion of an employee

population cannot contend the FLSA's OSE does not apply to them simply because they performed their job differently than Vasquez and did not complete their job consistent with their contractual obligations to perform it as an outside salesperson. *See Reyes v. Goya Foods, Inc.*, 549 F. App'x 876, 878 (11th Cir. 2013) (holding that an employee who personally did not perform his job consistent with the FLSA's OSE still could not escape the application of the FLSA's OSE because his job position called for him to perform it as a OSE); *Aschenbrenner v. Dolgencorp, Inc.*, 2011 WL 2200630, at *14 (D. Neb. 2011) (explaining that an employee's exempt status is not dependent upon the choices the employee makes to disregard the duties set forth in the applicable job description as "[u]nder such a rule, a manager theoretically could choose to perform nonmanagerial tasks rather than managerial tasks and be eligible for overtime pay under the FLSA").

Accordingly, if the Plaintiffs are similarly situated to Vasquez as they so claim then the end result for their FLSA claim should mirror that of Vasquez's FLSA claim: dismissal due to the application of the FLSA's OSE.

## 2.    Plaintiffs' Position

In this Motion, **Defendant must satisfy *its burden*** to show there are no genuine issues of material fact in dispute and that it, as the moving party, is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed.2d 265, 273-74 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.* 677 F.2d 1301, 1306 (9th Cir. 1982).

Defendant has not met this burden.

Under the FLSA an employer must pay an employee one and a half times the employee's usual hourly wage for all hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). This requirement does not apply, however, when the employee in question is subject to the FLSA's outside sales exemption. *See* 29 U.S.C. § 213(a)(1).  The employer bears the burden of proving that the exception applies to a

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

particular employee. *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124 (9th Cir. 2002); *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151. Moreover, "the FLSA is construed liberally in favor of employees; **exemptions 'are to be narrowly construed** against the employers seeking to assert them [. . .]" *Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005)(internal citations omitted).

Defendant's motion hinges on whether being **"away"** from the office less than 3% of the time constitutes being "customarily and regularly" engaged in conducting sales **away**[13] from "the employer's place of business" so as to transform its nonexempt employees to exempt employee in order to satisfy the exemption. 29 C.F.R. § 541.500.

Defendant's motion concedes that, under the FLSA, "the employer's place of business" expressly includes the employee's home office. *See also* 29 C.F.R. § 541.502. Accordingly, to prevail DKMC must show that Plaintiff and other loan officers were "customarily and regularly" engaged in conducting sales away from "the employer's place of business." They must be able to show that this was true for *each and every* workweek during the covered period.

Perhaps most importantly, where some of the sales activities "take place at a fixed site and others take place outside of a fixed site, the employee is properly classified as an outside sales employee **only if** the activities occurring outside of the office are **critical** to the sales process and occur on a **consistent** basis." *Dixon v. Prospect Mortg., LLC*, 11 F. Supp. 3d 605, 610 (VA Dist. 2014).

It is **the employer's burden to track hours** worked and ensure that an employee actually qualifies for an overtime exemption each workweek for which overtime is not paid. An employer who does not maintain adequate records to do so[14] cannot complain about the lack of evidence. *See* e.g. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 ("The employer cannot be heard to complain that the damages

---

[13] JEA Exhibits 4-25, 27-30, 32, ¶12 "I worked 99% of my time inside the office."
[14] JEA Exhibits 4-32, ¶16 "D&K had no policy or practice in place to track my work hours, and did not ask, advise or require me to record my daily time or weekly hours."

lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of § 11(c) of the Act… [E]ven where the lack of accurate records grows out of a bona fide mistake… the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis possible under the circumstances.") "[I]t would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts." *Id.*, (citing *Story Parchment Co. v. Paterson Co*., 282 U.S. 555, 563.). "It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages." *Id.* (citing *Eastman Kodak Co. v. Southern Photo Co*., 273 U.S. 359, 377-379; *Palmer v. Connecticut R. Co*., 311 U.S. 544, 560-561; *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 263-266.

       **i.**        **The FLSA's OSE Does Not Apply to Plaintiff Vasquez As He Was Not "Regularly and Customarily" Engaged in Outside Sales and Any Outside Work was Promotional or Merely Incidental to His Inside Sales Activities**

In *Safran v. United Health Prods*., 2020 U.S. Dist. LEXIS 93632, *7 a Nevada District Court held that a VP of Marketing, who worked from a home office, and who made eighteen in person client visits over fourteen months was not "customarily and regularly engaged" away from the office performing sales duties.

The evidence shows that Plaintiff's outside sales activity was far less than what was performed by the employee in *Safran*, particularly during COVID when, according to his uncontradicted testimony, he rarely had lunch with realtors, but would instead "buy lunches for them: order pizza, have it delivered, things like that, or do, like, DoorDash, have food delivered to their place of business…because everything was on lockdown." (JEA Ex.1, Vazquez Depo., 135:12-136).

Defendant mischaracterizes Plaintiff's testimony regarding the frequency of work-related lunches away from the office. Plaintiff testified the frequency of lunches

JOINT BRIEF REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

"could vary" and "*could be* a couple of times a week. There is (sic) weeks where I don't do it... there is no set pattern." Ex 1 at 27 (131:1-4). Plaintiff testified that "I need to eat so I would just say "Hey, by the way, do you want to grab something?" (JEA Ex 1 at 31 (135:1-11).

Plaintiff testified that a lunch *away* from the office was 30 or 45 minutes at most. Ex 1. At 23 (122:20-123:1). He testified that he submitted receipts for expense reimbursements for food which "could either be a realtor, referral source, a past client, or a friend that I am talking to." (JEA Ex 1 at 26 (128:12-17)).

The cases cited by Defendant do not support a finding that the exemption applies to Mr. Vasquez. Each of the cases cited by Defendant mentions the same 2007 DOL opinion letter that says "one or two hours a day, one or two times a week" is sufficient for the exemption to apply. *See* FLSA2007-2, DOL Opinion Letter from Paul DeCamp, Administrator at 3-4 Jan. 25, 2007). But none of the cases actually rely on that letter.

Although this statement does appear in the DOL letter at question, it oversimplifies the required analysis by not asking how important the outside sales activities were to the job. The FLSA's OSE sets up a *qualitative* test on what is akin to a sliding scale. The more important, critical and integral the outside sales activities are to the position, the less time the employee needs to spend on those outside sales activities for them to make the job exempt under the outside sales exemption.

This analysis is discussed in the 2007 DOL letter which Defendant relies so heavily on:

> Sales employees generally leave the model home or trailer for one or two hours a day, one or two times a week, to engage in selling or sales-related activities. These activities include meeting with prospects, real estate sales employees, or others involved in the home buying process; **showing propertie**s and communities to prospects; touring and **demonstrating model homes and home sites**; engaging in a wide variety of marketing efforts; and meeting with customers, real estate sales employees, construction personnel, and others to ensure customer satisfaction throughout the sale and construction of the new home. An **indispensable component** of the sales employee's sales effort is to take

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

the customer out to the various home-**sites** within the community. The sales employee helps the customer understand where a house will be built, **where the property lines begin and end**, and where the neighboring houses to be built will be situated. In many cases, it will be **crucial** for customers to understand whether they will be surrounded by other houses or vacant land, how close to road-noise the house will be, and where the location of any land-use restrictions (such as a septic tank) will be on that specific parcel of land. The sales employee also may take customers to view homes under construction or recently-completed homes.

*See* FLSA2007-2, DOL Opinion Letter from Paul DeCamp, Administrator at 3-4 Jan. 25, 2007). (Emphasis Added)

In other words, the DOL Opinion Letter found that the sales work performed outside of the office for between two and four hours every week -- physically showing customers model homes and the actual lot they could purchase -- was so "indispensable" and "crucial" to the sales that it turned what might otherwise be an inside sales job[15] into one that qualified for the FLSA's outside sales exemption.

**There is no similar showing here**. The quantity *and* quality of Plaintiff Vasquez's outside sales tasks were insufficient to qualify him for the outside sales exemption. Plaintiff spent at most between 0 and 90 minutes in *some* weeks doing anything outside his office. When he left the office, it could be to drop off a pizza or to cross paths with a friend, client or customer. There is no evidence that these meals were **indispensable** or **crucial** to his business – as in the DOL letter. Indeed, Plaintiff would likely have never left his office but for the fact he had an expense budget he could use to buy food.

Spending between 0 to 1½ hours a week at most doing something that everyone does anyway – eating lunch – does not transform an employee into an exempt status when his nonexempt job tasks consume nearly 99% of his work time. Such a ridiculous "tail wagging the dog" application of the exemption falls far outside the FLSA's intent.

---

[15]

JOINT BRIEF REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McDermott Will & Emery LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Indeed, the DOL issued an opinion letter involving "sales force mortgage" employees" in March 31, 2006. In that letter the DOL observed that the employer "expressly exclude from the request loan officers who 'perform their work mainly within the office.'" FLSA2006-11, DOL Opinion Letter from Alfred B. Robinson Jr., Acting Administrator at p. 1 on March 31, 2006. In other words, the employer did not try to argue that the OSE even applied to employees, like Plaintiff Vasquez, who performed their work mainly within the office.

It is clear that Vasquez performed mainly inside sales work and that any outside sales activity he performed – and some weeks there was none - was merely incidental to this *inside* work; not the other way around. In its March 2006 letter, the DOL indicated that an employee who performed inside sales activities was not automatically disqualified from the outside sale exemption if "**the inside sales activity is incidental to and in conjunction with qualifying outside sales activity**. *See Olivo v. GMAC Mortgage Co*., 374 F. Supp. 2d 545, 551 (E.D. Mich. 2004)("The performance of activities related to the sales of mortgage loan packages made outside the employer's place of business does not disqualify the 'sales force' loan officer from the exemption. Activities such as making phone calls, sending e-mails, and meeting with clients in the office are considered exempt if performed incidental to or in conjunction with the 'sales force' loan officer's own outside sales activities.")

The "sales force" loan officers being discussed in the DOL letter satisfied this requirement as they "spent a significant amount of time away from their employer's place of business meet(ing) with prospective clients at locations other than the employer's business, such as a client's home or other locations away from the employer's place of business. They meet with clients in person to sell mortgage loan packages; their contact with clients by telephone, mail, and e-mail is adjunct to these in-person contacts. The 'sales force' loan officers also obtain credit information and other necessary documentation for the loan application process. They make in-person calls on real estate agents and brokers, financial advisors, and other potential referral

sources to develop borrower leads. The 'sales force' loan officers also engage in marketing and promotional activities in support of their own sales." FLSA2006-11, DOL Opinion Letter from Alfred B. Robinson Jr., Acting Administrator at p. 1 on March 31, 2006.

Plaintiff, in contrast, spending less than an hour away from the office in **noncritical activity.** This included lunches with friends[16] and prospective customers but few of them being people he was actively working with at the time. Plaintiff's use of his "marketing budget" was "more PR function to promote [Draper and Kramer] generally." Vasquez Depo. 120:13-22. Such **promotional work**, generally "directed towards **stimulating the sales of [the] company," does not qualify as outside sales.** 69 Fed. Reg. 22,160, 22,163 (Apr. 23, 2004) (copy enclosed). *See also* 29 C.F.R. §§ 541.500(b) and 541.503.

Even if such meals could be described as tangentially sales *related* tasks, instead of promotional, the outside work certainly did not turn his job (which was almost completely performed via phone and email on a computer from his office) into a sales job that was done "primarily outside the office." In fact, any reasonable and fair reading of the evidence shows that Mr. Vasquez was an inside sales employee who sometimes never left the office during the week and other times left for minutes, not hours, once or twice a week. (JEA Ex.1, p.45, Vasqeuz Depo. 153:21-154:9),

Defendant has not carried its burden to show that the OSE applies to Plaintiff Vasquez. Defendant also fails to address the differences in how work was performed during the covered period. To prevail on summary judgment, Defendant must show that the exemption applied to "every workweek" of the covered period. *See* 29 C.F.R. § 541.701. Defendant glosses over this requirement by not addressing, or even mentioning, differences in Plaintiff's testimony such as the fact he mostly had meals

---

[16] JEA Ex.1, p.26 (Vasquez Depo, 128:12-15).

JOINT BRIEF REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

delivered during COVID and that he rarely ever saw the real estate agents, CPAs and other recipients of the deliveries. Vasquez Depo. 137:2-138:1.

Defendant's case law is all similarly distinguishable. Each of the cases mentions that same 2007 DOL opinion letter but the actual facts of each case showed true outside sales employees who spent 30, 40 or as much as 60 percent of their time on critical or integral sales activities when outside of their office. Their inside sales work was incidental and in conjunction with such outside sales.

This is certainly true in *Taylor v. Waddell & Reed, Inc.*, 2012 WL 10669 at *3 (S.D. Cal. 2012) cited by Defendant here. In *Taylor*, the plaintiff testified she was "**consistently outside of the office engaged in sales activity**… and in some weeks absent at least three or four days." 2012 WL 10669 at *12. There was evidence, in the form of testimony from a co-plaintiff Young, that Taylor was out of the office "perhaps 40, 50 percent" of the time. *Id.* Likewise, plaintiff Young testified he spent "easily 30, 40 percent" of his time on outside sales activity. *Id.* at * 13. The mere fact that the opinion mentioned the 2007 DOL letter does not transform a few outside meals into an "indispensable" and "crucial" part of Plaintiff's sales work each week, particularly during those weeks Plaintiff did not actually leave the office. *See* FLSA2007-2, DOL Opinion Letter from Paul DeCamp, Administrator at 3-4 Jan. 25, 2007).

Defendant also relies on *Hanz v. Prospect Mortg., LLC* 11 F.Supp.3d 612 (E.D. VA 2014) for the same proposition. *Hanz* acknowledges that there is "sparse" case law analyzing the specific parameters of the second element of the outside sales exemption but that most courts have held it is not a majority of the time test. The Court analyzed the importance of the outside activity to the sales process, stating: "**[T]he pertinent inquiry is** whether the employee performs <u>**tasks critical to the sales process**</u> away from the office on a greater than occasional basis." *Id.* at 620 (Emphasis Added).

Plaintiff Hanz worked considerable hours inside the office. While this did not preclude the outside sales exemption, the Court in *Hanz* recognized that "**it is the nature of the time spent outside the office, rather than the amount of time, that**

**drives the Court's conclusion. A weighty portion of the indispensable components of Plaintiff's sales efforts were concentrated in the outside period**. (Hantz Dep. At 60 (commenting that his sales model was based heavily on home buyer seminars conducted outside the office)." *Hantz*, 11 F. Supp. 3d at p. 620

Similarly, the plaintiffs in *Buglak v. Wells Fargo Bank, N.A*., 2017 U.S. Dist. LEXIS 113742, *8-9 spent at least **nine hours each week on <u>critical</u> sales activities**. "[T]hey regularly worked away from the office. To generate business with realtors, Buglak regularly attended open houses on Sundays for an average of three hours. (Buglak Dep. 118:3-16; 125:4-6.) He would then follow up with the realtors as many as three times per week, with each meeting lasting anywhere from 25 minutes to three hours. (Buglak Dep. 120:2-22.) He left [*9]  the office to attend the closings for sales that he made once per week, and visited customer homes approximately five times per week to obtain loan documentation. (Buglak Dep. 121:8-11; 121:12-122:4; 173:3-21.) Similarly, Silano spent anywhere from fifteen minutes to an hour each at three to four open houses every Sunday. (Silano Dep. 190:8-17; 193:21-194:23.) He also conducted "cold call" visits at realtors' offices up to three times per week, which would last up to an hour. (Silano Dep. 189:4-190:1; 194:25-195:7; 195:20-196:5.)"

Plaintiff proffers that his outside sales activity – spending between 0 and 1.5 hours a week to drop off a pizza or grab a bite with someone – was <u>not</u> a "task critical to the sales process." [17] Indeed, Defendant does not identify any business that Vasquez obtained as a result of one of these meals.

The "nature" of Plaintiff Vasquez's time outside the office – eating a sandwich with someone or delivering a pizza – were not "indispensable components of Plaintiff's sales efforts" or "a task critical to the sales process" – even if that kindness might generate good will.  It does not make a nonexempt loan officer exempt.

---

[17] JEA Exhibits 4-32, ¶12 in nearly every other Plaintiff Declaration, "…[meeting] outside the office was a rare occasion, certainly not indispensable for any of my loans to close, nor was it critical to my loan officer function."

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.     **For the Same Reasons, The FLSA's OSE Does Not
Apply to the Remaining Opt In Plaintiffs Who Likewise
Performed Outside Work that was Promotional or
Merely Incidental to Critical Inside Sales Activities**

Defendant next argues that all of the Plaintiffs can be adjudicated as exempt under the OSE because of the singular fact that they signed employment agreements that included the following vague language: "The Loan Officer does hereby acknowledge that this Agreement is that of an outside sales position and fully understands the Department of Labor's definition and requirements to work as an outside sales representative."[18]

This flimsy argument fails.

First, as a matter of law an employee's rights under the Fair Labor Standards Act (FLSA) "cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982). Logically, the contract's language – about working "consistent" with some DOL definition of OSE – cannot act to waive the FLSA any more than an *express* waiver of the FLSA would.

Additionally, the "fact" that this statement is in the agreements, simply does not show that the effected employees were undisputedly subject to the outside sales exemption. The sentence Defendant cites is the only reference in the entire nine-page long agreement to the term outside sales. The agreement does include the DOL's definition of outside sales or even use the words exemption or overtime. It does not include a link or other information where the employee could actually go to get this information. The agreements do not say anything anywhere about **where** the employee was to perform the work that Defendant **_now argues_** constituted a "covenant" to perform his job tasks **"away"** from the office – the agreements on their face do not

_____

[18] (JEA Ex.31, p.764 , Vasquez Decl. attachment)

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

require that ANY tasks be performed "away" from the office. Nor do the employment agreements suggest that the parties had any meeting of the minds on whether a home office qualifies as outside or not. (Indeed, Defendant argues it does for purpose of the FLSA, but not for California's OSE.)

Clearly, Defendant fails to meet its burden to show no dispute of material fact regarding the OSE's application to all of the Plaintiffs.

Defendant's case cites do not suggest otherwise. Two of them deal with the executive exemption. In *White v. Winn-Dixie Montgomery, LLC*, 2017 U.S. Dist. LEXIS 18440 the plaintiff – who represented himself *pro se* – lost his claim for overtime under the FLSA because he did not even present evidence that he was improperly compensated for overtime hours worked. The Court found that "Plaintiff was disciplined and ultimately terminated at least in part for not properly performing" his "primary duty" of "managing the store and supervising employees." The Court stated that "[o]n this Rule 56 record, it is clear that Defendant had both a factual and legal reason to conclude that Plaintiff's management duties were his 'most important' duties." *Id.*

In *Aschenbrenner v. Dolgencorp, Inc*., 2011 U.S. Dist. LEXIS 60097, *41-42 the Court implicitly found ample evidence showing that there was a reasonable expectation that the employee's job would, if properly performed, satisfy the managerial or executive exemption. "The Court concludes that the managerial duties performed by Aschenbrenner were relatively more important than her nonmanagerial duties. This conclusion follows from Aschenbrenner's job description, performance review criteria, bonus plan, training, and the tasks she actually performed while at work. Most important, Aschenbrenner's own testimony supports the conclusion that her managerial duties represented the most important part of her job. *"Aschenbrenner v. Dolgencorp, Inc*., 2011 U.S. Dist. LEXIS 60097, *42.

///

///

The Court recognized that a manager cannot "choose to perform nonmanagerial Tasks rather than managerial tasks and be eligible for overtime pay under the FLSA." *Aschenbrenner v. Dolgencorp, Inc*., 2011 U.S. Dist. LEXIS 60097, *41.

The same is true of *Reyes v. Goya Foods, Inc.*, 2013 U.S. Dist. LEXIS 195853, *14, which is an unpublished appellate decision from the Southern District of Florida. Even though plaintiff Reyes did mostly restocking and did not personally perform outside sales activities, his witnesses who held the job testified that it was an outside sales position and that restocking work supported the sales. The Court found that Reyes could not escape the OSE through performing the job in a different manner than was clearly intended.

These cases do not support Defendant. The single statement Defendant points to in the employment agreements is insufficient at this stage to show that the OSE applies to all loan officers who worked under the same contract. Indeed, the employment agreements never mention the term "exempt" or say anything about performing integral sales work outside the office. Defendant offers no evidence on this record that Plaintiff Vasquez, or any other Plaintiff, was ever disciplined for not performing up to Defendant's reasonable expectations for the job or that they would have satisfied the OSE had they in fact met Defendant's self-serving claim *now* that of its undisclosed expectations *then*.

Defendant has not carried it burden and, therefore, the Motion to summarily adjudicate Count 1 as to Plaintiff Vasquez and the remaining Plaintiffs must be denied.

///

///

///

///

///

///

///

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

JOINT BRIEF REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**B.** **Vasquez's California Wage And Hour Claims (Counts 2 Thru 5) Are Subject To Dismissal Because Of The Application Of The California Labor Code's Outside Sales Exemption Applies**

**1.** **DKMC's Position[19]**

"Outside salespersons" under California law are exempt from statutory overtime, minimum wage, reporting time, and meal-and-rest break requirements. *Espinoza v. Warehouse Demo Servs., Inc.* ("*Espinoza*"), 86 Cal. App. 5th 1184, 302 Cal. Rptr. 3d 820, 825 (2022). To qualify as an "outside salesperson," an employee must: (i) work more than half the time away from his or her employer's place of business; and (ii) be engaged in sales. *Id.* ***The main reason for this exemption is because outside salespersons generally control their own hours and are paid on a commission basis.***" *Id.* (citing to *Grubb & Ellis Co. v. Spengler*, 143 Cal.App.3d 890, 897 (1983) (holding that "a real estate person would probably qualify… as an outside salesperson as defined in Labor Code section 1171.")).

As the California Supreme Court has observed, the state and federal outside sales exemptions differ in important respects, and therefore interpretations of the federal regulations should not necessarily drive interpretation of the state provision. *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 786 (1999) ("Where the language or intent of state and federal labor laws substantially differs, reliance on federal regulations or interpretations to construe state regulations is misplaced."). Critical for the purposes of this Action is the difference in how the FLSA defines an "employer's

---

[19] If the Court grants summary judgment on the FLSA claim, which is the only claim giving rise to this Court's federal question subject matter jurisdiction, then the Court will need to independently decide whether or not to dismiss the Action in its entirety or whether to retain supplemental jurisdiction. This is a discretionary decision but the Ninth Circuit has cautioned District Courts that when the sole federal question claim is dismissed before trial, the balance of factors almost always point towards declining to exercise supplemental jurisdiction of the remaining state law claims. *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985) ("Generally, dismissal of federal claims before trial dictates that the pendent state claims should also be dismissed."). In an abundance of caution, DKMC briefs the propriety of Vasquez's remaining individual California state law claims in the event the Court decides to retain supplemental jurisdiction over said claims.

JOINT BRIEF REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

place of business" relative to California law: the FLSA explicitly incorporates an employee's home office into the definition of an "employer's place of business" (see 29 C.F.R. § 541.502) whereas California law ***does not*** expressly define an "employer's place of business" or otherwise hold that an employee's home office is an extension of the employer's place of business. *Moore v International Cosmetics and Perfumes Inc.* ("*Moore*"), 2016 WL 3556610, *5 (C.D. Cal. June 2016) (noting that, unlike the FLSA, California law does not define the phrase "employer's place of business"). The distinction between the FLSA and California law in this regard makes it inappropriate for any court to rely on anything from the FLSA to resolve the meaning of an "employer's place of business" under California law. *Id.* at *6 ("***Because California law defining an employer's "place of business" differs substantially from federal law, it is not appropriate for the Court to rely on interpretations of the FLSA in resolving the meaning of "place of business.***" (emphasis added)).

The California legislature's decision to abstain from adopting language into the California OSE explicitly holding that a home office is an extension of the employer's place of business is telling: a person working from home *may* be deemed to be working "outside" under California's OSE if the employee has no control over the individual at such a site. Such a conclusion comports, rather than conflicts, with the purpose behind California's OSE: "[t]he ***main reason*** for this exemption is because outside salespersons generally control their own hours and are paid on a commission basis." *Espinoza, Inc.*, 86 Cal. App. 5th 1184, 302 Cal. Rptr. 3d 820, 825 (2022) (emphasis added). Two decisions – *Espinoza* and *Moore* – provide powerful explanations for why California's OSE applies to Vasquez's employment.

In *Espinoza*, the California Court of Appeal recently overturned a summary judgment decision that concluded a sales advisor who worked in a third-party Costco warehouse was subject to California's OSE simply because sales advisor's employer did not own or operate the premises where the sales advisor worked. *Espinoza, Inc.*, 86 Cal.App.5th 1184, 1191-1193. The California Court of Appeal decided whether an

JOINT BRIEF REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

employer owns or operates where the employee performs their work is not a dispositive factor in determining whether the employee is working "outside" for the purposes of California's OSE. *Id.* at 1193. Instead, the California Court of Appeal decided that the dispositive feature for determining whether the premises where the employee is working is the employer's place of business turns on whether the employer has extensive control over the employee when they are performing their work at said premises. *Id.* at 1192. The California Court of Appeal concluded that the employer did have extensive control over the sales advisor in that case because: (1) Costco was the only physical location where the employer conducted its business and it even maintained an office in Costco; (2) the sales advisor was *required* to perform their job within a designated area of Costco and could not leave the designated area unless relieved; (3) the employer subjected the sales advisor to a fixed weekly schedule that was comprised by multiple six-hour shifts; (4) the sales advisor worked alongside an on-site company supervisor; and (5) the employer required the sales advisor to track their hours. *Id.* Based on these facts, the purpose of California's OSE was not served because "the exemption was not intended to apply to employees like appellant whose hours, schedule, and (exact) location of work are controlled by their employer." *Id.*

In *Moore*, the Honorable Dolly Gee was tasked with deciding, among other things, whether or not Fragrance Sales Consultants ("FSC") who worked almost exclusively in retail department stores to sell their employer's sales products are working outside of the employer's place of business and therefore subject to California's OSE. *Moore*, 2016 WL 3556610, *5 (C.D. Cal. June 2016). Although the employer maintained some control over the FSCs because it told them when and where to work, Judge Gee concluded that FSCs did not work at the employer's place of business under California's OSE because the employer did not maintain significant control over the third-party *premises* where the FSCs worked. *Id.* at *7. As such, Judge Gee concluded that California's OSE applied to FSCs, in part, because they performed 100% of their work outside of the employer's place of business. *Id.*

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

Here, it is undisputed that the responsibilities of Vasquez's DKMC employment required him to be engaged in sales. (Dck. No. 138, ¶ 2.) Instead, the Parties dispute the application of California's OSE to Vasquez's DKMC employment based on a disagreement over whether his admission of working a majority of time from home constitutes an admission that he spent a majority of time working away from DKMC's place of business. *Espinoza* and *Moore* confirm that his admissions in this particular case do in fact give rise to the proper application California's OSE. Unlike the sales advisors in *Espinoza*: (1) Vasquez's home was <u>not</u> the only place where DKMC conducted business operations – DKMC had operations in, Santa Barbara, amongst other places (UF D13); (2) Vasquez performed his work in multiple venues, including, the DKMC Santa barbara office and restaurants where he took his clients for lunch (Ufs D6 and D15); (3) Vasquez was free to leave his home whenever he so pleased and oftentimes did leave in the middle of the day to pick up his children from school (UF D12); (4) Vasquez worked from home by himself and there was no DKMC supervisor providing in-person supervision (UF D11); and (5) Vasquez never had a typical day and was never subject to a fixed working schedule (UF D8). Akin to the FSCs in *Moore*, DKMC simply had no significant control over Vasquez's home and therefore it cannot be deemed to be its place of business under California law. Affirming the application of California's OSE to Vasquez's DKMC employment under these facts is intuitive because Vasquez being a commission employee who could work wherever he wanted whenever he wanted is exactly why California's OSE exists. *Espinoza, Inc.*, 86 Cal.App.5th at 1191. (noting that the "main reason" for the California OSE is for it to apply to commission employees who control their work hours and work environment).

In short, the Court should conclude that California's OSE applies to Vasquez's DKMC employment because: (1) he concedes he was engaged in sales; and (2) the venue where Vasquez worked more than 50% of the time, i.e. – his home – cannot under the facts of this case be deemed DKMC's place of employment. The application

31

of California's OSE to Vasquez demands the dismissal of his California Labor Code claims for unpaid minimum wage and overtime, along with his claims unprovided meal and rest breaks.

### 2.    Plaintiffs' Position

Plaintiff agrees that the FLSA and California's OSE differ in certain aspects. The clearest difference between the two regulations is that California law provides a percentage of time that an outside salesperson must spend away from an employer's place of business (more than 50 percent), whereas federal law focuses on the employee's "primary duty." *See Vinole v. Countrywide Home Loans, Inc*., 246 F.R.D. 637, 640 (S.D. Cal. 2007), aff'd, 571 F.3d 935 (9th Cir. 2009).

Plaintiff Vasquez has testified that he left his home office just 1-2 times a week at most which is obviously nowhere near 50 percent of his time.

Defendant's motion argues that California's OSE does not consider Vasquez's home office as the employer's place of business so time spent working at home qualified as outside sales. This is even though it consisted primarily of email and phone communications, which are not considered outside sales tasks under the FLSA. *See* 29 CFR 541.502 ("Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls.")

There is no case law supporting this radical proposition, which would make California's OSE far less protective than the FLSA, frustrate the FLSA's purpose and give rise to questions of preemption. *City of Sacramento v. Public Employees Retirement System*, 229 Cal. App. 3d 1470, 280 Cal. Rptr. 847, 91 Cal. Daily Op. Service 3404, 91 D.A.R. 5423, 13 Employee Benefits Cas. (BNA) 2494, 30 Wage & Hour Cas. (BNA) 628, 1991 Cal. App. LEXIS 452 (Cal. App. 3d Dist. 1991).

*Moore v. Int'l Cosmetics & Perfumes, Inc.*, 2016 U.S. Dist. LEXIS 195053, *3, did not deal with home-based sales workers. It dealt with Fragrant Sales Consultants ("FSCs") who worked in assigned spaces in specified department stores, and never work out of ICP's New York office. The Central District Court referenced a 1998

JOINT BRIEF REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DLSE Opinion Letter which did not, in itself, even mention a home office but did argue for an expansive and fluid definition of the employer's place of business under California law which is "not limited by the IWC definition to a principal place of business or an administrative headquarters" *Id.* The court in *Moore* issued a broad definition and held that the California definition encompasses "temporary trailers located miles away from an employer's business" if they are "owned or controlled by [the] employer" and even if the physical location is "transitory" so long as it is "maintained" or "owned or controlled" by the employer. *Moore v. Int'l Cosmetics & Perfumes, Inc.*, 2016 U.S. Dist. LEXIS 195053, *13-14.

Interestingly the Court in *Espinoza v. Warehouse Demo Services, Inc.*, 86 Cal. App. 5th 1184 thought *Moore* was interpreting California law too narrowly to the extent it *required* a showing of ownership or control over the premises:

> [W]e disagree with Moore's legal interpretation of the DLSE's 1998 letter as requiring that a property must be owned or controlled by the employer to constitute its place of business. The 1998 DLSE letter did not state that an employer must own or control a property for it to be considered its "place of business" for purposes of the exemption. The letter was written in response to a specific question of whether employees of a home builder who worked in temporary trailers and model homes miles away from the employer's office fell within the outside salesperson exemption. (Dept. of Industrial Relations, DLSE Opn. Letter No. 1998.09.08, supra, at p. 1.) The DLSE concluded that an employer's place of business was not limited to its principal place of business or headquarters and that these employees did not fall within the exemption…. The DLSE reasoned that "[a]n employer can more easily control and monitor the hours and working conditions of salespersons who perform their sales work on property that is owned or controlled by the employer." This included property miles away from the employer's main office. However, **this does not mean that the only way an employer can control its employees' hours and working conditions is if it owns or controls the premises on which the employees work, as evidenced by the facts in this case**.

*Espinoza v. Warehouse Demo Services, Inc.*, 86 Cal. App. 5th 1184, 1193.

Read together, these cases show that the California definition is intended to be

broader than the FLSA's definition and that control or ownership over the work site is but *one way* of defining what is the employer's premises for purposes of the OSE.

Defendant cannot cite to any authority holding that emails or calls from a home office qualify for outside sales under the California OSE.

Finally – and wholly independent of the foregoing analysis recognizing that the California employee protections both here and generally are broader than the FLSA employee protections – is the following undisputed fact: **DKMC explicitly adopted "the Department of Labor's definition"** – inserting it by reference into each and every California Loan Officers' and Plaintiff's contract!  As clearly stated at 29 C.F.R. §541.502, so as to avoid any confusion over **the meaning of "away"**:

> **Away from Employer's Place of Business**
> An outside sales employee makes sales at the customer's place of business, or, if selling door-to-door, at the customer's home. Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls. **Any fixed site, whether home or office**, used by a salesperson as a headquarters or for telephonic solicitation of sales **is considered one of the employer's places of business….**

DKMC cannot have it both ways. Defendant cannot simultaneously claim **it is exempt** from paying overtime to the Plaintiff working more than 50% of the time from his home office on his phone and computer **because his California home office must be considered by the court as "away"[20]** – while at the same time claiming it is exempt under the law declaring the same Plaintiff working from his home office is not "away" from the employer's place of business.

///

---

[20] Cal.Code Regs., tit. 8, § 11040, subd. 1(C) (Wage Order No. 4–2001).) An " '[o]utside salesperson' " is one "who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities."

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**C.**     <u>**Vasquez's Business Expense Claim (Count 6) Is Subject To Dismissal**</u>

       **1.**     **DKMC's Position**

Pursuant to Labor Code section 2802, "an employer shall indemnify his or her employee for all *necessary* expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties". Labor Code § 2802(a) (emphasis added). In this case, Vasquez's FAC claims that DKMC violated Labor Code section 2802 when it failed to reimburse him for: (1) personal cell phone expenses; (2) home internet expenses; and (3) personal vehicles. See FAC, ¶¶ 17 and 126; *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292–93 (9th Cir. 2000) (noting that the operative complaint frames the issues the defendant needs to address on summary judgment). None of his claims have merit.

*First*, Vasquez's claim for personal cell phone expenses has no merit because he admits that DKMC provided him with a laptop with a means to make business telephone calls and he simply used his cell phone for personal convenience. (UF D9 and D10.) Using a personal cell phone for convenience purposes cannot drive a viable Section 2802 claim – the expenditure must be *necessary* and the cell phone use here obviously was not necessary when DKMC provided an alternative means of communicating telephonically. *Mireles v. Paragon Sys., Inc*., 2014 WL 4385453, *6-7 (S.D. Cal. Sept. 4, 2014) (reasoning that where the use of personal cell phones for work purposes is not required, the expenses incurred are not necessary and plaintiffs have no claim under section 2802).

*Second*, Vasquez's claim for home internet expenses fails for the same reason. He chose to work from home despite having the option to perform necessary work from his DKMC Santa Barbara office. (UF D13.) Therefore, any expenses associated with him working from home cannot be deemed a *necessary* business expenditure.

*Third*, Vasquez's allegation about his personal vehicle expenses cements the conclusion that he regularly spent time outside. Perhaps this is why he did not identify

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

costs associated with his personal vehicle use as a damage on his statement of damages. *See generally* Dck. 68-2. The omission is important because Vasquez's personal vehicle expenses cannot drive a viable Section 2802 claim when he himself does not claim it as a loss. *Mireles*, 2014 WL 4385453, *7 (holding there can be no 2802 claim when the claimant does not contend that they suffered a loss). Notwithstanding, DKMC provided Vasquez with a $8,000 marketing budget to submit any business development expense incurred. Vasquez does not contend that he submitted any personal vehicle expenses for reimbursement that it went unreimbursed. Therefore, DKMC cannot be held liable for Vasquez's failure to submit a cost for reimbursement when under these facts that is the only way for it to reasonably know he suffered a necessary business expense for personal vehicle use. *Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901, 905 (N.D. Cal. 2009) (holding that an employer's 2802 obligations only trigger when the employer knows or has reason to know the employee incurred a necessary business expense).

For each of the reasons above, the Court should grant summary judgment on Vasquez's Labor Code section 2802.

## 2. Plaintiffs' Position

Defendant argues that Plaintiff is waived or estopped from home office expense reimbursement because Defendant had a written policy saying he could perform work from their Santa Barbara office and that he could have used a phone system installed on his laptop. These arguments fail since it is clear Defendant *knew or should have known* that Plaintiff Vasquez was working from home and using his laptop, home internet, and cell phone for work purposes. [21]

Prior to COVID Plaintiff Vasquez saw his supervisor and branch manager

---

[21] D&K's website provides the public the personal cell phone numbers of all currently employed Loan Officers, directing customers to contact Plaintiffs' office or mobile number,
*e.g* JEA Ex.4, p.298-299 (Altpeter); JEA Ex.9, p.380-381 (Cron); JEA Ex.25, p.648-649 (Perez); JEA Ex.26, p.680-681 (Rodriguez)

JOINT BRIEF REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Ruben Lopez maybe once a week on those rare occasions Vasquez went in person to the office. (JEA Ex.1, p.12, Vasquez Depo. 70:3-21). During COVID Defendant issued a COVID 19 update that "We highly recommend all staff works from home while the Federal Social Distancing Guidelines are in effect." DK-Vasquez00068.[22]

"Fair interpretation of Labor Code §2802, which produces practical and workable results consistent with the public policy underlying those sections, focuses not on whether an employee makes a request for reimbursement but rather on whether the employer either knows or has reason to know that the employee has incurred a reimbursable expense; if the employer does, it must exercise due diligence to ensure that each employee is reimbursed. *Stuart v. Radioshack Corp.* (N.D. Cal. 2009), 641 F. Supp. 2d 901, 2009 U.S. Dist. LEXIS 41658. **The employer's promulgation of policies alone did not fulfill the duty**. *Stuart v. Radioshack Corp.* (N.D. Cal. 2009), 641 F. Supp. 2d 901, 2009 U.S. Dist. LEXIS 41658.

Here Defendant knew or had reason to know that Vasquez was incurring home office expenses. Defendant knew he was working from home. Defendant knew he was using a laptop that would not function without home internet access. Defendant knew Plaintiff was using a cell phone.

Moreover, an employer is not entitled to assert affirmative defenses of laches and equitable estoppel to an employee's claim for indemnification under Labor Code §2802 because of the strong public policy against equitable defenses under §2802, Labor Code §2804, and CC §3513 when such defenses would nullify an important policy adopted for the benefit of the public. *Stuart v. Radioshack Corp.* (N.D. Cal. 2009), 259 F.R.D. 200, 2009 U.S. Dist. LEXIS 84804.

///

///

///

---

[22]    The distancing guidelines were arguably in effect until August 2022. *See* e.g. https://www.cdc.gov/media/releases/2022/p0811-covid-guidance.html

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

### D. Vasquez's Derivative Claims (Counts 7 and 8) Are Subject To Dismissal

#### 1. DKMC's Position

Vasquez's PAGA and UCL claims necessarily rely on his underlying California claims for unpaid minimum wage, unpaid overtime, unprovided meal and rest periods, and unreimbursed business expense. *See generally* FAC. As discussed above, each of those claims are subject to dismissal. Therefore, Vasquez's PAGA and UCL claims are also subject to dismissal. *Price v. Starbucks*, 192 Cal. App. 1136, 1147 (2011) (affirming dismissal of PAGA claims because they were derivative of Labor Code claims dismissed); *Aleksick v. 7–Eleven, Inc.*, 205 Cal.App.4th 1176, 1185 (2012) ("When a statutory claim fails, a derivative UCL claim also fails.").

#### 2. Vasquez's Position

For the reasons stated herein Defendant's request to dismiss the claims upon which the UCL and PAGA are predicated fails. Plaintiff Vasquez and the remaining Plaintiffs were not subject to the FLSA or California outside sales exemption. Defendant knew or should have known, as a matter of reasonable inference, that Plaintiff Vasquez was working from a home office, using his home internet for the laptop, and using his cell phone and email for work purposes.

These derivative claims survive.

## IV. CONCLUSIONS

### A. DKMC's Position

For the reasons set forth above, DKMC respectfully requests that the Court grant its Motion for Summary Judgment. If not the entirely collective (and for DKMC does not concede the Court has personal jurisdiction over disputes beyond Vasquez), Vasquez's FLSA claim is subject to dismissal. Without that claim, the Court may be stripped of subject matter jurisdiction. If the Court does decide to retain supplemental jurisdiction, then record clearly shows that Vasquez's individual state law claims are subject to a similar fate as his FLSA claim – dismissal.

**B.**    **Plaintiffs' Position**

Defendant's Motion for Summary Judgment should be denied. Plaintiff Vasquez performed inside sales work via phone and email. Any outside sales *related* activity he performed – and some weeks there was none - was merely incidental to this *inside* work; not the other way around. He also incurred home office business expenses which Defendant knew or should have known about.

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-4.3.4

I, Christopher Braham, attest that concurrence in the filing of this Joint Brief On Defendant Draper and Kramer Mortgage Corp.'s Motion for Summary Judgment, or in the alternative, Partial Summary Judgment has been obtained by other signatory.

Dated: December 31, 2024        Respectfully submitted,

**MCDERMOTT WILL & EMERY LLP**

By:    */s/ Christopher A. Braham*
        CHRISTOPHER A. BRAHAM
        BRIAN CASILLAS
        Attorneys for Defendant
        DRAPER AND KRAMER MORTGAGE
        CORP.

Dated:  December 31, 2024        **LAW OFFICES OF TIMOTHY P. RUMBERGER**

By:    */s/ Timothy P. Rumberger*
        TIMOTHY P. RUMBERGER, Esq.
        Counsel for Plaintiff and Class Counsel
        for all putative Class Members

JOINT BRIEF REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT